THE STATE OF OHIO, APPELLEE, *v.* YOUNG, APPELLANT.

[Cite as State v. Young, 7 Ohio App. 2d 194.]

(No. 8040—Decided August 23, 1966.)

*Mr. C. Howard Johnson,* prosecuting attorney, and *Mr. James A. Pearson,* for appellee.

*Mr. John J. Wolern* and *Mr. Paul L. Thompson,* for appellant.

DUFFEY, J.   This is an appeal from a judgment of the Common Pleas Court of Franklin County convicting the defendant, appellant, of the crime of harboring a felon as prohibited by Section 2917.22, Revised Code.

In essence, the charge here is that the defendant harbored or concealed one John Bellomy, knowing that he had feloniously attacked and caused the death of Larry Clifford. The death of Clifford occurred at approximately 11 p. m. on June 15, 1963, as a result of a stab wound inflicted in an altercation with another man. Bellomy was arrested at approximately 6:50 p. m. on the following day, June 16. He attempted to escape and while fleeing was shot and killed by a police officer. The alleged harboring occurred between 3 a. m. and approximately 2 p. m. of that day, June 16.

In the first assignment of error, defendant complains of a reference in the prosecutor's opening statement to an alleged statement of John Bellomy that he killed Larry Clifford. The second assignment of error is closely related, complaining that the court permitted the prosecution to effectively prove the alleged statement of Bellomy even though the statement was inadmissible.

In our opinion, the alleged declaration of Bellomy was not admissible evidence. It was hearsay, and the circumstances were not such as to bring it within any recognized exception to the hearsay rule. The prosecutor's reference was, therefore, improper. The second assignment of error is also well taken. In a series of questions and answers, officers Morgan and Frost were permitted to testify over objection that they had asked Bellomy whether he had killed Clifford, that Bellomy had answered the question, and that the subject of the answer was the death of Clifford. This technique of examination was a subterfuge, intended to convey inadmissible hearsay evidence.

However, while both assignments are well taken, the errors were not prejudicial. The alleged statement related to proof that Bellomy was the man who caused Clifford's death. That fact was adequately proven by other evidence.

The third assignment of error challenges the denial of a motion to dismiss at the close of the prosecution's case. Since the defense elected to proceed with the trial, any error in ruling on that particular motion as such was waived.

The fourth assignment of error concerns the admission of irrelevant and prejudicial evidence. We find this assignment well taken.

A mass of testimony was adduced in the state's case in chief designed to prove that the defendant had been in love with and very jealous of Clifford, had threatened him, and had threatened other women with whom he had had relations, marital or extramarital. Some of this evidence was very sensational. Many of the events occurred more than two years previous to the attack on Clifford. The state contends that this was all admissible as tending to prove motive.

Proof of motive is to be distinguished from intent. Motive is a mental state which may induce an act. It is not an element of the crime, but rather a circumstantial fact used to strengthen an inference, drawn from other evidence, that an act was done. See *Shelton* v. *State* (1922), 106 Ohio St. 243; 21 American Jurisprudence 2d 166, Criminal Law, Section 85; 15 Ohio Jurisprudence 2d 499, Criminal Law, Section 332. The act in question here is the rendering of aid to John Bellomy after the attack on Clifford. The facts as to what aid or assistance the

defendant provided were proven by her alleged admissions and the testimony of her daughters. Those facts were not materially contested. Her motive for aiding John Bellomy was, therefore, an insignificant addition to that proof.

Evidence of the defendant's relationship with Clifford would have been admissible on a different ground. The defense in its case attempted to establish that whatever aid was provided by the defendant was provided under duress—in effect, a denial of intent to harbor. On rebuttal, reasonable evidence of the relationship might have been offered not to prove a motive to aid, but to prove an intent to harbor. However, no rebuttal was presented.

Regardless of the ostensible proof of motive or the possible proof of intent to harbor, the record here shows that the prosecution's effort was directed at proving a motive to induce murder. The purpose of this mass of evidence was to show that the defendant induced Bellomy to attack Larry Clifford. If the record indicated only that the state had anticipated a defense of duress, and had done so overzealously, a different problem would be presented. In this case, the manner of presentation was designed to, and did add to an irrelevant and prejudicial accusation of conspiracy to murder, rather than adding to the proof of the harboring charge for which defendant was on trial. There is no point in cataloging the numerous ways in which this accusation was presented in the trial. One other incident will suffice to illustrate the extent to which it was injected into the case.

In his opening statement, the prosecutor stated that he would prove that defendant had offered a Pontiac automobile to Bellomy. The direct implication was that this was offered as an inducement to kill Clifford. The offer was not proven and on the prosecutor's own statement was not provable. The error was compounded when on recross-examination of defendant the state directly referred to a Pontiac.

A fair trial demands that the accused be tried on the evidence produced in open court by witnesses who can be confronted, cross-examined and rebutted. The prosecutor is entitled to express his opinion of what the evidence shows. He is not entitled to express his personal belief in the guilt of the accused. See *State* v. *Thayer* (1931), 124 Ohio St. 1.

In the present case, the prosecutor not only conveyed his personal opinion, but did so with respect to a heinous crime for which the accused was not under indictment and for which she was not on trial. From the opening statement through the closing argument, the record is permeated with the accusation that defendant was guilty of at least conspiracy to murder, and perhaps aiding and abetting in murder. In our opinion, the constant repetition of the accusation, both overtly and covertly, during the trial was highly prejudicial. It was an open invitation to the jury to find the defendant guilty of the crime charged, not on the evidence of that crime, but on the ground that she was guilty of a far more heinous crime which could not be proved.

The fifth assignment of error is that the judgment is against the manifest weight of the evidence. In our opinion, the judgment is against the manifest weight of the evidence and is unsupported by sufficient evidence.

Section 2917.22, Revised Code, provides:

"No person shall harbor or conceal any person who has committed a felony, knowing such person to have committed a felony or having reasonable grounds to believe that such person has committed a felony.

"Whoever violates this section shall be imprisoned not less than one nor more than seven years."

There is sufficient evidence to support a jury finding that Bellomy committed a felonious assault on Larry Clifford. There is also evidence to permit a finding that the defendant, upon discovering Bellomy in her house at 3 a. m. on June 16, had reasonable grounds to believe that Bellomy had committed such a felony. The remaining elements of the crime are the overt acts which constitute harboring or concealing, and the required intent. The facts stated in this opinion bearing on these two elements are those which the evidence of record would support.

Clifford was attacked and died shortly after 11 p. m. on the night of June 15. After being informed of the attack, the defendant made a voluntary appearance at the police station. She returned to her house about 3 a. m. and found Bellomy in the kitchen. He was injured, having a stab wound in the leg, a cut hand, and another on his face. She gave him some tape for his

hand and an aspirin tablet. He was permitted to use a basement room. This room had been used on various occasions by various persons as a bedroom and was, in effect, a spare room. The defendant left for work about two hours later—some time between 5:30 a. m. and 6 a. m. Two police officers interviewed her at work between 7:30 a. m. and 8 a. m. Their questions concerned her whereabouts during the night and general information with regard to Clifford and the attack. They were not searching for John Bellomy by name or description. She did not tell them about Bellomy, was vague, and volunteered no useful information.

About 8:30 a. m., the defendant's daughters called her about the death of Clifford. She told her daughter, Sharon, that Bellomy was in the basement and that she thought he had appendicitis and to find out if he wanted breakfast. Between 8:30 a. m. and 10 a. m., defendant called Sharon. She told her daughter to tell Bellomy that he should "stay put," not to go anywhere until he heard from her, and that two detectives were "nosing around."

Between 10 a. m. and 10:30 a. m., two police officers went to the house and checked the bedrooms for possible evidence. This was apparently without a warrant. They were not looking for anyone and did not discover Bellomy. When they arrived he went upstairs and when they checked the bedrooms he hid in the bathroom.

Defendant was arrested shortly before noon at work. The basis of arrest is not clear. She was allowed to drive her car home, and she and the officers arrived about twelve o'clock. The officers made no search, and Bellomy was not discovered. Defendant was taken to the police station and remained there until after the death of Bellomy on the evening of June 16.

While there is some evidence to indicate an earlier time, it is clear that Bellomy had left the house by 2 p. m. in the early afternoon of June 16.

With the exception of the "stay put" telephone call to her daughter, there was no communication between the defendant and Bellomy after the defendant left for work about 5:30 a. m. It is also clear on the evidence that at no time between 3 a. m. when the defendant discovered Bellomy and 5 p. m. of the fol-

lowing afternoon did the police have any probable cause to believe Bellomy was involved in the death of Clifford. The police were not seeking him either for apprehension or even investigation during any of the time that he was in defendant's house.

Harboring or concealing under Section 2917.22, Revised Code, is a statutory modification of the common-law crime of accessory after the fact. "At common law, an accessory after the fact is one who, knowing that a felony has been committed by another, receives, relieves, comforts, or assists the felon, or in any manner aids him to escape arrest or punishment. * * * the person charged must have had an intention to shield the felon from the law." See 21 American Jurisprudence 2d 200, Criminal Law, Section 126.

Harboring is defined in Bouvier's Law Dictionary, Third Revision, as:

"To receive clandestinely or without lawful authority a person for the purpose of so concealing him that another having a right to the lawful custody of such person shall be deprived of the same."

See *Van Metre* v. *Mitchell*, 2 Wall. Jr. 317, Fed. Cas. No. 16,865 (1853). This definition was contained in Bouvier's First Edition in 1839.

Harboring must be sharply distinguished from misprision. "By the common law of England every man was bound, under pain of punishment, to make himself an informer as to any treason or felony that he witnessed, or that came to his knowledge." 21 American Jurisprudence 2d 87, Criminal Law, Section 7. Ohio has no common-law crimes. Misprision is not a crime in Ohio. The imposition of an obligation under criminal penalty to inform upon other people involves difficult issues of policy. Failure to inform has not generally been recognized as a crime in American jurisdictions. The present case makes it apparent that in some instances misprision could present complex questions under the modern application of the privilege against self-incrimination.

In our opinion, harboring requires an overt act which does in fact hinder, or can reasonably be said to have hindered, the detection or arrest of a felon. The overt act must be done with a specific intent to shield the felon from detection or arrest.

The proven conduct of the defendant in this case consisted of:

(1) Failure to inform the police, permitting the alleged felon to remain in the house when discovered, and permitting him the use of the spare room.

(2) Providing the man with tape and an aspirin tablet.

(3) A verbal request by defendant to her daughter to give the man breakfast.

(4) A verbal message giving the advice to "stay put," and information that detectives were "nosing around."

The first item consists of wholly passive conduct. The second and third items were equivocal acts, consistent with compassion and charity, and cannot reasonably be said to have hindered the authorities. Assuming that a mere verbal act may be a sufficient overt act under Section 2917.22, Revised Code, the telephone call in the fourth item did not hinder the police, and, in our opinion, was not sufficient under the circumstances to constitute harboring within the statute.

Accordingly, we find the evidence insufficient to support a conviction under Section 2917.22, Revised Code.

The judgment of the Common Pleas Court will be reversed and vacated and the defendant discharged.

*Judgment reversed.*

TROOP, J., concurs.

DUFFY, J., concurring. I concur in the judgment of reversal on the basis of the fourth assignment of error and would remand the case for a new trial.