THE STATE OF OHIO, APPELLEE, *v.* CANTU, APPELLANT.

[Cite as State v. Cantu (1971), 27 Ohio App. 2d 55.]

(No. 683—Decided April 20, 1971.)

*Messrs. Gingher & Christensen,* for appellant.
*Mr. Gerald A. Mollica,* for appellee.

STEPHENSON, J. On January 30, 1970, John Edward Cantu was arrested and charged in the Athens Municipal Court with a violation of R. C. 2923.51, which section is entitled "Dispersing dangerous assembly." Trial was held upon his plea of not guilty and he was convicted. He then instituted an appeal to this court.

The following errors are assigned:

"FIRST ASSIGNMENT OF ERROR.

"The Court erred in not dismissing the affidavits at the close of the State's case.

"SECOND ASSIGNMENT OF ERROR.

"The Court erred in not dismissing the case at the close of all the evidence."

We, at this point, must overrule the first assignment of error. The record reflects that after the trial court overruled the motion to dismiss, the defendant then presented evidence on his behalf. In so doing, any error in the ruling of the trial court was waived. *State* v. *Young,* 7 Ohio App. 2d 194; *State* v. *Pinnick,* 23 Ohio Law Abs. 560, 4 Ohio Jurisprudence 2d 439, Appellate Review, Sec. 1096.

R. C. 2923.51, under which defendant was charged, reads as follows:

"Where five or more persons are engaged in violent or tumultuous conduct which creates a clear and present danger to the safety of persons or property, a law enforcement officer, or commissioned officer of the organized militia or armed forces of the United States called to duty to protect against domestic violence, shall, forthwith upon view or as soon as may be on information, and unless prevented by such persons order such persons to desist and disperse to their several homes or lawful employments. Such order shall be given by such means and as often as necessary to reasonably insure that it is heard unless the giving or hearing of such order is prevented by such persons. Whoever refuses and knowingly fails to obey such order shall be fined not more than fifty dollars."

The essential facts in this case are not in dispute. On January 30, 1970, at approximately 10:00 A. M., a group of approximately one hundred persons assembled in front of the administration building protesting fee increases by Ohio University. Later in the day, there was approximately four hundred in the group and the protests continued until approximately 2:00 P. M. Bricks were thrown through windows of the building and the assembled persons were described as "wild." Police officers of the city of Athens and members of the Highway Patrol were called in to assist the university police officers. A dispersal order was read in front of and at the rear of the buildings. Although denied by defendant, the record would justify a finding by the trial court that he heard the order.

The officers at approximately 1:30 P. M. began a sweep to clear the area. An Athens police officer encountered the defendant and some other students. The officer ordered the students to disperse and upon defendant's refusal to do so, he was arrested.

At trial, the prosecution offered no evidence that the defendant was one of the persons engaged in the tumultuous or violent conduct which resulted in the giving of the dispersal order, but did establish that he was in and about the assembled persons. Defendant, by his testimony, claimed he was only a bystander.

The evidence establishes without question that five or more persons were engaged in violent and tumultuous conduct which created a clear and present danger to persons and property and an order to desist and disperse was repeatedly given.

The question, therefore, presented by this appeal, is whether a refusal by one in such an area to obey a dispersal order constituted a violation of R. C. 2923.51 although no proof is offered that such person was engaged in violent or tumultuous conduct.

In construing penal statutes, the Ohio Supreme Court has made the following observations:

"* * * under that fundamental rule of strict construction applicable to all penal laws, a statute defining a crime

cannot be extended by construction to persons or things not within its descriptive terms, though they may appear to be within the reason and spirit of the statute. Persons cannot be made subject to such statute by implication. Only those transactions are included in them which are within both their spirit and letter; and all doubts in the interpretation of such statutes are to be resolved in favor of the accused." *State* v. *Meyers,* 56 Ohio St. 340 at 350.

"We are quite aware that the rule of law and of this court is that a statute defining an offense is not to be extended by construction to persons not within its descriptive terms, yet it is just as well settled that penal provisions are to be fairly construed according to the expressed legislative intent, and mere verbal nicety, or forced construction, is not to be resorted to in order to exonerate persons plainly within the terms of the statute." *Barker* v. *State,* 69 Ohio St. 68 at 74.

In *Inglis* v. *Pontius, Supt. of Banks,* 102 Ohio St. 140 at 148, Chief Justice Marshall summarized the Ohio decisions in this respect in the following manner:

"Penal statutes, or those which restrain the exercise, regulate the conduct, or impose restrictions upon any lawful trade, occupation or business, should be strictly construed, and their scope should not be extended to include limitations not clearly expressed in their terms. Neither should a statute defining an offense be extended by construction to persons not included within its descriptive terms. In all other respects the general rules of construction applicable to remedial statutes have equal application to penal statutes; that is to say, they are to be fairly construed according to the expressed legislative intent without resort to verbal niceties or technicalities. There should not be any forced construction to exclude from their operation persons who are plainly within their terms; statutes designed to prevent fraud should be so construed as to prevent the evil aimed at. Strict construction does not override the requirement that words are to be given their usual and ordinary meaning and that the purpose and intention of the lawmaker should be carried into effect. It

is an aid in ascertaining the legislative intent to consider the existing evil which it is intended to remedy.''

Bearing these principles in mind, we examine the statute.

R. C. 2923.51, a new section, was enacted as a part of Substitute House Bill No. 996, 132 Laws of Ohio 2802, which, in its title, states the following as part of its purpose: ''to provide for the better control of riots and attendant offenses.'' Subsequent parts of the act created the offenses of second and first degree riot. These offenses consist of violent or tumultuous conduct with certain specified intents required to be present in first degree riot and violent and tumultuous conduct with specified intents required in second degree riot. The act also repealed R. C. 3761.14, which authorized dispersal of a riotous assembly, and appears, in part, to have been a basis for the enactment of R. C. 2923.51.

R. C. 2923.51 makes no reference to the riot sections and the gist of the offense under this statute and the conduct involved is the refusal to disperse in compliance with the dispersal order.

Plaintiff, in its brief, forcibly and logically urges the view that a failure to interpret the statute to include bystanders would refute the purpose and necessity of the statute. Its brief states in part:

''* * * It is common knowledge that the major problem a law enforcement officer faces in controlling a riot situation is the mass number of those present which interfere with him properly fulfilling his role. The so called 'observer,' by merely being there, shields the malicious actions of those who conduct themselves more violently, and, indeed, lends courage and support to the malicious participant by encompassing him in a cloak of anonymity woven from sheer numbers. A perfect example of this is the case at bar.''

To this might be added the observation that when the authorities are called upon to disperse an unlawful assembly, it would be, in many cases, an impossible task for the police officers to distinguish between those persons who are

present at the scene as onlookers and those who have engaged in violent or tumultuous conduct. In a related vein, see the opinion of Judge Guernsey in *In re Removal of Pickering*, 25 Ohio App. 2d 58 with respect to the liability of police officers for injuries they inflict in riots and their problems in determining who and who are not rioters.

We have no doubt that the conduct of the defendant in this case was within the spirit of the statute insofar as the statute attempts to control dangerous assemblies by dispersing them. The decisive question, however, is whether such conduct is also within the letter of the statute or may only be reached by implication and speculation. In its material parts, R. C. 2923.51 provides:

"Where five or more persons are engaged in violent or tumultuous conduct which creates a clear and present danger to the safety of persons or property, a law enforcement officer * * * shall * * * order *such* persons to desist and disperse * * *. Whoever refuses or knowingly fails to obey *such* order shall be fined * * *." (Emphasis added.)

Since the order shall be given to "such persons," it would appear to be without question that "such persons" are those persons engaged in violent or tumultuous conduct. "Whoever" refuses to obey "such" order logically, therefore, must mean those persons engaged in the prohibited conduct and who refuse to desist and disperse.

Only by a forced, strained and, by our view, improper, construction of the statute can the order to desist and disperse be extended to apply to persons who are not or have not been engaged in such conduct. Giving the statute a reasonable and common-sense construction, we can only conclude that bystanders are not in the descriptive terms of the statute and it was intended to apply to only those persons engaged in violent or tumultuous conduct. Had the legislature intended otherwise, we are confident they could and would have chosen appropriate terms for that purpose.

The authorities who drafted the Model Penal Code (Proposed Official Draft, 1962) foresaw the problem herein presented and provided in Section 250.1, the following:

"Where [three] or more persons are participating in a course of disorderly conduct likely to cause substantial harm or serious inconvenience, annoyance or alarm, a peace officer or other public servant engaged in executing or enforcing the law may order the participants and *others in the immediate vicinity* to disperse. A person who refuses or knowingly fails to obey such an order commits a misdemeanor." (Emphasis added.)

We have examined the statutes of Pennsylvania, Massachusetts, California, Florida and Michigan and the legislatures in each of these states deemed it necessary to, either, specifically provide that it is an offense for any person to remain at a scene, excepting police officers and certain other persons, where a dispersal order is read, or declare that a person remaining in the area after a dispersal order is read is a member of an unlawful assembly or riot. Pa. Stat. Ann. Tit. 53, Sec. 16620; Mass. Ann. Laws Ch. 269, Sec. 2; Cal. Pen. Code Sec. 409; Fla. Stat. Ann. Tit. 22A, Sec. 870.04; Mich. Ann. Stat. ch 286 a, Sec. 28.791.

Chief Justice Marshall, in 1820, in *U. S.* v. *Wiltberger,* Wheaton 76 at page 96, made the following observation which is of obvious relevance here:

"* * * The case must be a strong one, indeed, which would justify a court in departing from the plain meaning of words, especially, in a penal act, in search of an intention which the words themselves did not suggest. To determine that a case is within the intention of a statute, its language must authorize us to say so. It would be dangerous, indeed, to carry the principle, that a case which is within the reason or mischief of a statute, is within its provisions, so far as to punish a crime not enumerated in the statute, because it is of equal atrocity, or of kindred character, with those which are enumerated. If this principle has ever been recognized in expounding criminal law, it has been in cases of considerable irritation, which it would be unsafe to consider as precedents forming a general rule for other cases."

If it can be said that this case demonstrates the need

for additional and specific authority for law enforcement officers to disperse or otherwise deal with bystanders in such a situation, the grant of such authority is the function of the legislature.[1] We do not pass upon whether or not the conduct of defendant may have been in violation of other criminal statutes, but hold only that such conduct did not violate R. C. 2923.51.

There being no evidence in this case that defendant engaged in tumultuous or violent conduct, the order to disperse was not applicable to him, and in holding otherwise the trial court committed prejudicial error. The judgment below is reversed and final judgment entered for defendant.

*Judgment reversed.*

ABELE, P. J., and GRAY, J., concur.

---

[1]The "bystander" problem has not gone unnoticed. House Bill No. 511 has been introduced by Mr. Norris and others in the 109th General Assembly. The bill is a proposed comprehensive revision of the substantive criminal law of Ohio. Included therein is a proposed Revised Code Section 2917.04, which would provide in part:

"(A) Where five or more persons are participating in a course of disorderly conduct in violation of Section 2917.11 of the Revised Code, *and there are other persons in the vicinity whose presence creates the likelihood of substantial harm or serious inconvenience,* a law enforcement officer or other public official may order the participants *and such other persons to disperse.* No person shall knowingly fail to obey such order.

"(B) Nothing in this section requires persons to disperse who are peaceably assembled for a lawful purpose.

"(C) * * *."