[Cite as *State v. Pultz*, 2016-Ohio-329.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                          Court of Appeals No. WD-14-083

    Appellee                                     Trial Court No. 2014CR0102

v.

Kenneth Pultz                                      **DECISION AND JUDGMENT**

    Appellant                                    Decided:  January 29, 2016

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, Thomas A.
Matuszak, Chief Assistant Prosecuting Attorney, and David T.
Harold, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, Kenneth Pultz, appeals from the November 4, 2014 judgment of

the Wood County Court of Common Pleas convicting him, following a jury trial, of two

counts of rape, violations of R.C. 2907.02(A)(1)(b) and 2907.02(B), and one count of

gross sexual imposition, a violation of R.C. 2907.05(A)(4). For the reasons which follow, we affirm, in part, and reverse, in part, for resentencing.

{¶ 2} On appeal, appellant asserts the following assignments of error:

FIRST ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY IMPROPERLY ALLOWING EVID.R. 404(B) EVIDENCE TO BE INTRODUCED BY THE STATE.

SECOND ASSIGNMENT OF ERROR

APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, §10 OF THE CONSTITUTION OF THE STATE OF OHIO.

THIRD ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY IMPOSING CONSECUTIVE SENTENCES WITHOUT MAKING JUDICIAL FINDINGS UNDER R.C. 2929.14(C)(4).

FOURTH ASSIGNMENT OF ERROR

THE TRIAL COURT COMMITTED PLAIN ERROR TO THE PREJUDICE OF APPELLANT AT SENTENCING BY IMPOSING

FINANCIAL SANCTIONS WITHOUT CONSIDERATION OF APPELLANT'S PRESENT OR FUTURE ABILITY TO PAY.

FIFTH ASSIGNMENT OF ERROR

THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 3} Appellant was indicted on two counts of rape and one count of gross sexual imposition on March 6, 2014. The indictment alleged in two separate counts that appellant raped the minor victim on two separate occasions—between January 1, 2005, and January 1, 2007 (Count 1) and between January 2, 2007 and December 31, 2007 (Count 2)—by engaging in sexual contact with the victim, who was not his spouse and whom he knew was under the age of 10 at the time. Appellant was also charged in Count 3 with gross sexual imposition for allegedly having sexual contact with the victim, who was not his spouse and was under the age of 13, sometime between January 1, 2005 and December 31, 2007. The following evidence was presented at trial.

**Testimony Relating to the Victim's Accusations**

{¶ 4} The victim testified she was born February 8, 2000, and was six years old the first time appellant sexually assaulted her. She was staying overnight at her grandmother's home. Her grandmother put her to bed in one of the bedrooms, while her grandparents, an uncle, and appellant, her great uncle, went to a bar. When the victim woke up in the middle of the night, appellant was lying next to her with his hands down

3.

her pajama pants, fondling her. When he put his finger in her vagina, she told him he hurt her. She became uncomfortable and hid in the living room behind a bookcase.

{¶ 5} The grandmother testified, however, that while the victim would spend the night on the weekends, the grandmother could not recall the victim ever staying overnight on a weeknight when she was six-to-eight years old. The grandmother also could not recall appellant ever staying overnight at her house.

{¶ 6} The victim further testified appellant sexually abused her in a similar manner numerous times, maybe 20 or more times between the ages of six to eight (during the years 2006 through 2008) when she was visiting her great grandmother's home where appellant lived. During those visits, appellant never forced her to go into his room, but he would ask her to hang out with him and watch TV in his bedroom while other family members were elsewhere in the house. The victim went because she had a close relationship with appellant and others indicated that she could trust him. She testified appellant may have told her once or twice that she should keep his actions secret.

{¶ 7} The grandmother testified the victim would often visit her great grandmother's home next door while the grandmother was babysitting. The victim would go upstairs and come down about an hour later. When the victim was six years old, the grandmother had a feeling that perhaps something inappropriate was happening upstairs because the victim was the only child appellant allowed to come up to his room. The grandmother recalled telling the victim in 2005 not to go upstairs and be alone with appellant anymore. At first, the victim obeyed; but, when appellant "hollered" for the

4.

victim to come upstairs, she complied. The grandmother testified the victim's mother disapproved of the grandmother telling her granddaughters what to do. However, the mother never recalls having a conversation with her mother regarding appellant and her daughter. Because there were discrepancies between the grandmother's statements to the detective who investigated this case and her testimony at trial, her interview was broadcast for the jury to compare her statements and testimony.

{¶ 8} The victim testified she was too scared to tell anyone because she thought no one would believe her or would blame her. When she was eight years old, she became uncomfortable and tried to avoid appellant. When she was nine or ten years old, she began to understand that appellant's actions had been wrong. She felt she had been coping with the situation by cutting herself, smoking, getting poor grades, and doing other "bad" things.

{¶ 9} Just before her 11th birthday, she told her cousin about the abuse. She told her grandmother late in December 2012 or early January 2013 that appellant had inappropriately touched the victim when she was younger. The grandmother also testified the victim told her of appellant's actions around this time period. In January 2013, after attending a family gathering where she felt uncomfortable, the victim told her mother appellant had raped the victim without going into detail. Her mother testified her daughter had been especially quiet at the gathering.

{¶ 10} The victim denied discussing the assaults with other family members. She did not like to talk about the details, and it was harder each time she did. The victim

5.

denied being influenced by her grandmother or other family members to make false accusations against appellant. She had finally told someone because she wanted to get justice and stop appellant from doing the same thing to others. The victim also denied knowledge of other family members having been sexually abused by appellant but told the detective appellant had done "things" in the past. At trial, the victim explained she believed that he must have been doing similar things to others because appellant had done it to her and he was a very aggressive person. The detective believed the victim was only speculating that there had to have been other victims or that there had been prior accusations that were not addressed.

{¶ 11} There were some discrepancies between her testimony at trial and her statements to a detective who investigated the case. However, the victim testified she may have described at trial her clothing and her actions after the first assault differently because she may have been making assumptions or forgotten some details. The detective testified he specifically asked the victim if there had been any penetration and she said no. The victim testified at trial she could not remember the statement but may have wanted to bring the interview to an end or had not understood the concept at the time. She recalled mentioning the penetration when she met with the prosecution to prepare for trial. Nonetheless, at the time of trial, she was certain that there had been penetration ten

6.

or more times.  The recorded interview with the detective was broadcast for the jury to observe the victim making her statement to the detective.[1]

{¶ 12} Conflicting testimony was presented as to whether any other family member witnessed the attacks.  No family member admitted at trial to having any knowledge of the assaults.  However, the victim told the detective her grandmother had told her that another great uncle had witnessed something.  He denied knowledge of the assaults to the detective.  The victim's mother also testified her daughter had told her that someone had witnessed one of the assaults.  The grandmother denied ever telling the victim that an uncle had walked in on one of the assaults or that others had also been sexually abused.  However, the grandmother testified she told the detective that appellant's behavior had to be stopped because this had been happening to the family over generations.

{¶ 13} The victim's mother testified she knew appellant spent time alone with her daughter.  The mother witnessed her daughter's behavior become more isolated and

---

[1] While appellant requested a complete record be submitted to us on appeal, the video recordings of the interviews with the investigating detective, which were played for the jury, were not included in the record nor transcribed.  Appellant played the video recordings to impeach the witnesses.  He did not, however, move to admit the video recordings into evidence.  The burden of producing and preserving the record for appellate review falls upon the appellant.  App.R. 9(B); *Karmazyn v. Wilson,* 8th Dist. Cuyahoga No. 56787, 1990 WL 71566 (May 31, 1990); *State v. Ramsey*, 12th Dist. Warren No. 87-08-061, 1988 WL 102416, *2 (Sept. 30, 1988).  Since appellant's decision to not admit the video recordings could have been a trial tactic, we consider his manifest weight of the evidence argument in light of the record that was submitted.

7.

withdrawn around the time she was nine or ten years old. Her behavior became worse after they moved into the great grandmother's home. The mother knew her daughter started smoking at age 11, did not learn until later that she had also been cutting herself on her legs and arms for about a year before their move. After the move, her daughter would sleep with the light on, have nightmares, and cry in the middle of the night. The mother could not get her daughter to talk about the issues until after a family gathering in 2012.

### Other Acts Testimony

{¶ 14} Several of appellant's family members testified as to how they were sexually abused by appellant. One niece testified she could vividly recall when she was three years old (in the 1970s), when appellant was babysitting her and they were alone in her home. Appellant was in her bedroom lying next to her on the bed. She could remember a substance being directed toward her mouth, but could not recall what it was. After it hit her mouth, she vomited, and he attempted to console her. Her mother, appellant's half-sister, also testified that she remembered the night. Appellant had appeared nervous when she returned home and, immediately as she and her husband entered the home, told them their daughter had vomited after choking on a hot dog. Appellant admitted at trial that he had ejaculated into his niece's mouth but denied speaking to his half-sister.

{¶ 15} Appellant's daughter testified in detail about the first time appellant sexually assaulted her. When she was three or four years old (in the 1980s), appellant

8.

called her into his bedroom. Although she felt uncomfortable, she got into bed with him as he requested. He made her put her hand on his penis and he put his hand in her underwear and started to rub her until it began to hurt and she started crying and asked him to stop. He did not stop until she started crying and yelling that he had scratched her vagina. Appellant became angry and sent her away. After appellant and his wife divorced, appellant had custody of his two daughters. The witness testified appellant would sexually assault her almost on a nightly basis by making her help him masturbate and performing oral sex. As she got older, he would rub her vagina; but if he attempted penetration with his finger, she would yell out in pain and he would stop. Her grandmother (the victim's great grandmother) was frequently in the house at the same time because she lived there as well. One time, appellant's daughter woke her grandmother up to tell her what was happening. Her grandmother did not believe her and told her to go back to bed. During the assaults, appellant would tell her that she was his special girl, he loved her, and that he had to show her how a dad loves his daughter. He threatened to kill his daughter's mother and sister if the daughter told anyone what was happening. However, when she was nine and one-half years old, the daughter told her mother about the abuse.

{¶ 16} The witness's aunt, the victim's grandmother, testified that she recalled talking to appellant's daughter when she was about 18 years old because she was very confused about her memories. The aunt told appellant's daughter that the grandmother could not remember appellant doing something to his daughter when she was a child.

9.

{¶ 17} Appellant's daughter denied having been influenced by her aunt to testify against appellant. In fact, she recalled her aunt had defended appellant for many years. Appellant's daughter denied ever talking to the victim about the details of what appellant had done.

{¶ 18} At the time of the interview with the detective, appellant's daughter testified she did not know anyone else had accused appellant of a sexual assault. Appellant had left a message at the time that she needed to call him right away, but she did not. Later, she was approached by appellant's girlfriend who wanted to know what had happened when appellant's daughter was a child.

{¶ 19} Appellant's former wife recalled when her daughter was three years old, there were blood stains in her underwear. Her daughter accused someone else, but later told her mother appellant had abused her. Appellant denied the accusations at the time and accused their daughter of lying. Appellant's former wife believed her daughter because her behavior had also changed when she was about seven or eight years old. Her daughter became withdrawn, was no longer joyful, did not want to play, and would stand in the corner by herself.

{¶ 20} Another of appellant's nieces (whose mother is the victim's grandmother and appellant's sister) testified that in the 1980s, beginning just before she turned seven years old and appellant was a few years older, appellant sexually assaulted her in her parents' home (the victim's grandmother's home). The witness recalled an after-hours party where appellant had been drinking and was telling her how pretty she was, as others

10.

in the family had told her as well. In the middle of the night after everyone was asleep, appellant came into her room, lay down next to her, and started rubbing her back and then progressed to rubbing her stomach, backside, and her vagina. He also kissed her. While he did so, he told her she was beautiful and she was his favorite niece. He told her he would always care about her no matter what happened, and he knew she was scared. She was scared that night, but did not call out for help because she did not want her sisters who were sleeping in the same room to wake up. The assault did not last very long.

{¶ 21} The witness had trouble remembering subsequent assaults. She did recall that when she was 15 or 16 years old, she saw appellant come into her bedroom after a party and stand there for a few minutes. When she saw him take a step toward the bed her sisters shared, the witness moved so appellant would come to her bed and would not touch her sisters. That night, the assault lasted about an hour and involved vaginal intercourse.

{¶ 22} Again, appellant told her she was his favorite niece and that no matter what, he would always love her. Appellant had vaginal intercourse with her several times afterward, usually in her room. She testified about other times when appellant would only touch and/or kiss her and he gave her drugs and alcohol. As she got older, there were fewer opportunities for appellant to be alone with her and she protected herself by avoiding such situations.

{¶ 23} During those years, appellant told her not to tell her mother about the abuse because she would not be believed since she and her mother did not have a good

11.

relationship. When she was about seven years old, the witness had attempted to tell her mother that other men had sexually assaulted her but her mother had not believed her. Her mother testified she could not remember her daughter ever saying appellant had sexually abused her as a child.

{¶ 24} This witness denied that her mother convinced her to tell things that were not true or planted the memories in the witness's mind. When the witness heard about the victim's accusations, the witness contacted the detective. While she supported the victim, they never discussed the abuse.

{¶ 25} The investigating detective interviewed appellant in the summer of 2013. He denied having sexually abused both the victim and his daughter. He admitted to sexually abusing his three-year-old niece who testified and another niece who did not testify in this case when he was a juvenile. He stated he had been sexually molested by relatives as a child, but, he had not carried that behavior into adulthood. He quit using drugs and alcohol; and when he got married, he no longer thought about abusing children. He was not sure how he overcame the issue, but it happened without counseling. He accused his sister, the victim's grandmother, of convincing the victim to fabricate accusations against him.

{¶ 26} At trial, appellant admitted sexually molesting his niece once in the early 1970s when she was five years old and he was between the ages of 11 and 13. He denied that the molestation continued or that he ever had intercourse with her when he was in his 20s.

12.

**Estate Conflict**

{¶ 27} In 2011 and 2012, the victim's great grandmother's estate was settled. Conflicts arose among the siblings regarding appellant's continued use of the home. Appellant's and the grandmother's sister testified she observed animosity between the grandmother and appellant because appellant may have taken some of their mother's property out of her home. Appellant's girlfriend also testified she witnessed the grandmother attack appellant after a court hearing and filed a police report because the grandmother pushed the girlfriend into a door to approach appellant.

{¶ 28} In March 2012, the siblings attempted to evict appellant from the house for failure to pay rent. The grandmother testified appellant tricked her into skipping a court hearing and the case was dismissed. Appellant continued to live in the house until July 2012, when the grandmother purchased the home from the estate.

{¶ 29} During the eviction proceedings the grandmother told appellant to stay away from her children and grandchildren because he was causing a division between them. Appellant testified that after the proceeding, the grandmother called him and threatened to get him. The grandmother could not recall ever having had a telephone conversation with appellant where she threatened to "get him."

{¶ 30} Appellant also testified that his relationship with his sister (the victim's grandmother) deteriorated after their mother's death because they fought about their mother's possessions. Appellant accused the grandmother of attempting to take more than her share. She also wanted appellant to sign a lease and pay rent and taxes. He

13.

refused to do so, and the siblings initiated an eviction process in March 2012. Appellant attempted to avoid the grandmother afterward, but she called him at work to berate him for giving the keys to the house to their sister. During two separate conversations, the grandmother threatened appellant: "One way or another, I'm going to get you." While appellant believed something happened to the victim, he believes the grandmother influenced the victim to believe that appellant was the man who molested her. He also believed that the grandmother persuaded appellant's daughter and his niece to make false accusations against him.

### Appellant's Defense Witnesses

{¶ 31} Appellant's girlfriend testified she communicated with appellant's daughter about her accusations and was told that the daughter had been talking to a therapist and family members because she was recalling memories that appellant had asked her to inappropriately touch him. The girlfriend admitted she had heard rumors that appellant had admitted to molesting his sister when she was a child. However, appellant had proclaimed his innocence regarding the victim's accusations.

{¶ 32} Appellant testified in his own defense. He testified he was sexually molested as a child and believed that he was acting out when he sexually molested his nieces when he was a juvenile. After he turned 16, he never did anything inappropriate again.

{¶ 33} Appellant denied ever sexually abusing any other relative and asserted they were all lying. On cross-examination, he also denied having molested another juvenile in

14.

the early 1990s when he was 30 years old.  However, he admitted he had pled guilty and was convicted of sexual battery with regard to that accusation.

{¶ 34} As to the victim, specifically, he denied ever having spent the night in his sister's house (the victim's grandmother) or knowing of a time when the victim spent the night at her great grandmother's house where appellant lived.

{¶ 35} Appellant further testified that beginning November 2006, he worked out of state on various building projects.  The victim's grandmother testified, however, appellant worked out of the state from approximately 2001 to 2006.  Appellant testified he did not have any documentation to corroborate his testimony because the documents were lost during his move from his mother's home in 2012.  He specifically recalled in detail that the work required him to be gone for several weeks and then returning to his mother's home for a few days before leaving for the next job.  He testified this pattern continued until he returned home on August 26, 2007, for a local job.  He further testified that on August 29, 2007, he had a heart attack.  Afterward, until he had open heart surgery on November 15, 2007, he could not walk very far without being totally out of breath.  After surgery, he slowly recovered until he was fully recovered in January 2008 and returned to work in February 2008.  He did not, however, have any documentation to corroborate his incapacitation during this time period.  The victim did not recall appellant having a heart attack or being ill or working out of state while she was between six and eight years of age.

{¶ 36} Appellant also testified that during the summer of 2012, he was working at a local mall when the victim had been dropped off to go to a movie with a friend. He further testified the victim found appellant and told him she was scared and asked him to walk with her. The victim denied ever meeting appellant at the mall in the summer of 2012 and walking around with him.

{¶ 37} Furthermore, appellant testified he hosted a family gathering in December 2012 and could not recall anything unusual happening that day or the victim acting differently. Appellant's girlfriend testified the victim sat on the couch and played on her phone, and she did not appear upset. Both appellant and his girlfriend testified that when the family left, they all hugged and appeared normal.

### Assignments of Error

{¶ 38} In his first assignment of error, appellant argues the trial court erred by allowing Evid.R. 404(B) "other acts" evidence to be introduced by the state when the evidence was irrelevant and the prejudice from the evidence outweighed its probative value. Appellant filed a motion in limine to prevent or limit the testimony of witnesses who testified regarding prior sexual abuse by appellant. The trial court denied the motion, appellant renewed the motion at trial, and the trial court denied the motion again.

{¶ 39} Pursuant to Evid.R. 404(B), evidence of other crimes, wrongs, or acts cannot be used to prove a defendant has a propensity to commit a specific crime. However, the trial court has broad discretion to admit other acts evidence if it is probative of the defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, or

absence of mistake or accident." Evid.R. 404(B). *Accord State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 17. The rule is broader than the common law. *See State v. Hector*, 19 Ohio St.2d 167, 249 N.E.2d 912 (1969), paragraph two of the syllabus. The rule is also broader than statutes which codified the common law rule. *See* R.C. 2945.59 and 2907.02(D). Because the rule adds to the exceptions recognized under common law, the rule must be strictly construed against admission of the evidence. *State v. Broom*, 40 Ohio St.3d 277, 281-282, 533 N.E.2d 682 (1988).

{¶ 40} In exercising its discretion to admit other acts evidence, the trial court should apply a three-part analysis: 1. Does the other act evidence make a fact of consequence more or less probable? (Evid.R. 401.) 2. Is the other act evidence presented for a legitimate purpose or only to prove the defendant acted in accordance with his character? (Evid.R. 404(B).) 3. Is the probative value of the other acts evidence substantially outweighed by the danger of unfair prejudice? (Evid.R. 403.) *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 68 and *Williams* at ¶ 20.

{¶ 41} On appeal, we give great deference to the trial court's exercise of its discretion and reverse only if it is shown that the trial court abused its discretion and material prejudice resulted. *Kirkland* at ¶ 67. "Abuse of discretion" is defined as an "unreasonable, arbitrary, or unconscionable use of discretion, or as a view or action that no conscientious judge could honestly have taken." *Id.*, quoting *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23.

17.

**{¶ 42}** Beginning with the first step of the analysis, we must consider whether the other acts evidence is probative of a material issue of fact. Evid.R. 401 provides: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The state argues the other act evidence establishes appellant's motive or intent and a common plan or scheme. Appellee argues the other acts are too remote and dissimilar to be relevant.

**{¶ 43}** We address the use of other acts evidence to prove intent first. Other act evidence is admissible to prove intent only if a particular intent is a material element of the offense charged. *State v. Curry*, 43 Ohio St.2d 66, 70, 330 N.E.2d 720 (1975). In this case, appellant was convicted of rape and gross sexual imposition. To establish the offense of rape, the state was required to prove that appellant engaged "in sexual conduct with another who is not the spouse of the offender * * *, when [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person. R.C. 2907.02(A)(1)(b). To establish the offense of gross sexual imposition, the state was required to prove that appellant had "sexual contact with another, not the spouse of the offender" who "is less than thirteen years of age, whether or not the offender knows the age of that person." R.C. 2907.05(A)(4). Neither offense includes a specific intent. Therefore, the other acts evidence in this case could not have been admitted to prove intent. *Curry*.

{¶ 44} Other acts evidence is admissible to prove motive, which is "defined as a mental state that induces an act" and as "the moving power that impels action for a definite result." *State v. Smith*, 84 Ohio App.3d 647, 665, 617 N.E.2d 1160 (2d Dist.1992), quoting in part *Shelton v. State*, 106 Ohio St. 243, 248, 140 N.E. 153 (1922), and in part *People v. Molineux*, 168 N.Y. 264, 297, 61 N.E. 286 (1901). "Motive" is "not an element of the crime, but rather a circumstantial fact used to strengthen an inference, drawn from other evidence, that an act was done." *State v. Young*, 7 Ohio App.2d 194, 196, 220 N.E.2d 146 (10th Dist.1966). In the case before us, appellant denied having abused the victim. Evidence that he had also abused other female members of the family as young girls tends to prove that he had a motive for abusing the victim. *Accord Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, at ¶ 25.

{¶ 45} Finally, other acts evidence is admissible to prove a common plan or scheme for purposes of establishing the identity of the perpetrator. When the identity of the perpetrator is at issue, "other act" evidence tends to show the defendant's identity as the perpetrator by showing that he "committed similar crimes within a period of time reasonably near to the offense on trial, and that a similar scheme, plan or system was utilized to commit both the offense at issue and the other crimes." *Young* and *Broom*, 40 Ohio St.3d at 282, 533 N.E.2d 682 quoting *Curry*, 43 Ohio St.2d at 73, 330 N.E.2d 720.

{¶ 46} Appellant acknowledged at trial that something happened to the victim, but denied he had sexually assaulted her. Therefore, the identity of the rapist was at issue. The other act evidence in this case demonstrated that appellant sexually abused young

19.

family members, in a similarly aggressive manner, beginning when they were very young and unable to comprehend what has happening to them. He exploited his position of trust by abusing them in the sanctity of their own bedroom or his bedroom in a relative's home within the vicinity of others, and manipulated them to keep the assaults secret. The evidence was not used to show that appellant must have raped the victim because he had abused other family members. Rather, the collective accusations are probative of the issue of whether the victim was sexually abused and whether she had correctly identified appellant as the one who had sexually abused her. These other acts also tend to disprove appellant's defense that the victim falsely accused him under the guidance of his sister, the victim's grandmother, who wanted retribution against appellant regarding disagreements over the settlement of their mother's estate.

{¶ 47} Appellant argues that the other acts evidence was unrelated directly to the current offense because the victim could not recall appellant ever telling her that he loved her, seeing him naked, or him asking her to touch him as the other witnesses had testified. He also argues the other acts were remote in time compared to the current offense. We disagree. While the other acts occurred approximately 10-to-20 years prior to the current offense, the accusations were similar enough in character to make them relevant to establish that appellant utilized a common plan or scheme over the years to sexually abuse the children in his family.

{¶ 48} The second step is to determine whether the other act evidence was presented for a legitimate purpose or only to prove the defendant acted in accordance

with his character. In this case, the state introduced the evidence to establish appellant's identity and motive for the crime. The court gave limiting instructions to the jury to ensure they did not use the other acts evidence to find that appellant acted in conformity with his character. We may presume the jury followed these instructions. *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995).

{¶ 49} Third, we must determine whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. Even when evidence is probative of a material issue and is introduced for a legitimate purpose, it can still be excluded if the prejudice resulting from the introduction of the evidence outweighs its probative value.

{¶ 50} In this case, prejudice would certainly result from the jury knowing that other family members over the years accused appellant of sexually abusing them as children and that appellant admitted to two accusations which occurred when he was a juvenile. However, the similarity between the other accusations of sexual abuse and the victim's accusations is probative of her credibility, the identity of appellant as the one who committed the crimes, and appellant's motive to commit the crime. With the limiting instruction given to the jury, we find the prejudicial effect did not outweigh the probative value of the evidence.

{¶ 51} Therefore, we find appellant's first assignment of error not well-taken.

21.

{¶ 52} In his second assignment of error, appellant argues his counsel rendered ineffective assistance in violation of his rights under both the United States Constitution and Ohio Constitution.

{¶ 53} Appellant bears the burden of proving his counsel was ineffective since an attorney is presumed competent. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Lott*, 51 Ohio St.3d 160, 174, 555 N.E.2d 293 (1990). To meet this burden of proof, appellant must show: (1) there was a substantial violation of the attorney's duty to his client, and (2) the defense was prejudiced by the attorney's actions or breach of duty. *Strickland, supra*, at 687-689, and *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Prejudice is shown where there is a reasonable probability that a different result would have occurred in the case if the attorney had not erred. *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 108, quoting *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus.

{¶ 54} First, appellant asserted that his counsel rendered ineffective assistance by developing a case that the victim fabricated the charges because of the influence of her grandmother. Appellant argued that only calling the grandmother as a witness to develop the outside influence was insufficient. Counsel should have called an expert to explore the psychological or outside influences that would lead the victim to fabricate the allegations.

22.

{¶ 55} Generally, when the action of counsel amounts to a trial tactic, it cannot later be used in a challenge that the trial counsel rendered ineffective assistance of counsel. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674, and *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 117. Whether or not to follow a certain theory and which witnesses to call to support that theory are strategic decisions that generally cannot be addressed on appeal because those decisions involve matters outside the appellate record. *State v. Hartman*, 93 Ohio St.3d 274, 297, 754 N.E.2d 1150 (2001), citing *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus.

{¶ 56} In this case, there is nothing in the record to support appellant's contention that there were other witnesses to call or that they would have had any testimony beneficial to appellant's defense. There is no evidence that the attorney inadequately investigated the case. Therefore, we find counsel's decisions were a matter of trial strategy and do not constitute ineffective assistance of counsel. "Effective assistance of counsel does not guarantee results." *State v. Longo*, 4 Ohio App.3d 136, 446 N.E.2d 1145 (8th Dist.1982), paragraph one of the syllabus.

{¶ 57} Secondly, appellant argues his counsel opened the door during appellant's testimony regarding his past behavior. He argues that poor questioning led the state to pursue a line of questioning during cross-examination that would otherwise have been unavailable.

23.

**{¶ 58}** Before appellant testified, the state indicated appellant had two prior convictions which were over ten years old, which the state did not intend to use to establish its case pursuant to Evid.R. 609(B). However, the state argued that if appellant took the stand and opened the door to the issue of whether appellant had ever sexually abused a child when he was an adult, the state intended to cross-examine appellant on the prior offenses. The court held the state could cross-examine appellant to the limited extent of whether or not he had in fact pled guilty to an earlier sexual battery offense against a juvenile in the 1970s.

**{¶ 59}** Appellant elected to take the stand and was questioned on direct regarding two instances when he admitted to sexually abusing two nieces when he was a juvenile. Appellant denied sexually abusing a child when he was an adult. The court concluded appellant had opened the door to that issue and allowed the state to question appellant regarding a prior conviction when he was approximately 30 years old.

**{¶ 60}** Appellant was clearly warned that his prior criminal conviction would be used against him if he took the stand. Yet he did. Clearly this was a defense strategy and not a matter for appellate review and cannot constitute ineffective assistance of counsel based on the appellate record.

**{¶ 61}** Finally, appellant argues his counsel should have objected to the imposition of court costs in this matter. The trial court is required to impose court costs pursuant to R.C. 2947.23 whether or not the defendant is indigent. *State v. Rohda*, 6th Dist. Fulton No. F-06-007, 2006-Ohio-6291, ¶ 13. A defendant may move at the time of sentencing

24.

to waive payment of court costs. *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, ¶ 11, and *State v. Threatt,* 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164, paragraph two of the syllabus. R.C. 2947.23(C), effective March 22, 2013, provides that the trial court retains jurisdiction to address the waiver, suspension, or modification of the payment of costs after sentencing. Therefore, the decision of when to file the motion to waive the payment of costs can be a matter of trial strategy. *State v. Farnese*, 4th Dist. Washington No. 15CA11, 2015-Ohio-3533, ¶ 12-16.

{¶ 62} First, we find there is no evidence in the record that appellant is indigent. Simply because he has been sentenced to two life terms plus four years does not necessarily mean that appellant is unable to pay the court costs. Second, there is no requirement that counsel must file a motion to waive payment of the costs at the time of sentencing. Such a decision is part of the defense strategy and cannot be reviewed on direct appeal. Appellant has failed to demonstrate that he was prejudiced by the decision not to file the motion at the time of sentencing.

{¶ 63} We conclude that appellant has failed to demonstrate his counsel rendered ineffective assistance. Appellant's second assignment of error is not well-taken.

{¶ 64} In his third assignment of error, appellant argues the trial court erred by imposing consecutive sentences without making the judicial findings required by R.C. 2929.14(C)(4).

{¶ 65} When a felony sentence is appealed, the scope of review is limited to whether there is clear and convincing evidence in the record to support the sentencing

25.

court's findings under R.C. 2929.14(C)(4) that consecutive sentences should be imposed and whether the sentence is contrary to law. R.C. 2953.08(G)(2)(a).

{¶ 66} Pursuant to R.C. 2929.14(C)(4), before imposing consecutive sentences, the trial court must find that consecutive sentences are "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," and that one of the circumstances listed at R.C. 2929.14(C)(4)(a), (b), (c) existed:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

26.

**{¶ 67}** The trial court must make the findings, but there is no requirement that the court state its reasons for these findings on the record. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 27. A word-for-word recitation of the statutory language is not required, so long as the record supports the trial court's findings. *Id.* at ¶ 29.

**{¶ 68}** In the case before us, the trial court stated it was imposing consecutive sentences because it found:

> that the *course of conduct* in this case *was so great and unusual that no single penalty would adequately punish the offender in this particular case.* And, further, the history, including convictions for Sexual Battery in 1991, and Trafficking in Cocaine in 2001, as well as other offenses of Drug Paraphernalia, Driving Under the Influence, that that *history suggests that in order to sufficiently protect the public from the offender*, the court would order that the three sentences be served consecutively to each other. (Emphasis added.)

**{¶ 69}** Furthermore, the court stated in its sentencing judgment entry:

> This Court finds that the Defendant's course of conduct was so great and unusual that no single prison term for any of the offenses committed adequately reflects the seriousness of the Defendant's conduct. Further based on the Defendant's prior criminal convictions, including sexual and drug offenses, this Court finds that consecutive sentences are necessary to

27.

protect the public from future crime by the Defendant and to adequately punish the Defendant.

{¶ 70} At the sentencing hearing, it is clear that the court found consecutive sentences were necessary to protect the public from future harm, and the court made the additional finding that the multiple offenses were part of a course of conduct and that the harm caused was so great and unusual that a single penalty would not adequately punish appellant. We also conclude those findings were supported by the facts in the record that appellant sexually abused a young child for many years causing her great mental harm, that the abuse was systematically done to undermine the child's natural defenses, and that appellant admitted to sexually abusing other children in the family.

{¶ 71} However, the court did not make any specific finding at the sentencing hearing or in its judgment that the "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." Having failed to conduct the statutory analysis and make all the required findings to impose consecutive sentences, the trial court's judgment is contrary to law. Therefore, we find appellant's third assignment of error well-taken.

{¶ 72} In his fourth assignment of error, appellant argues the trial court committed plain error in sentencing by imposing financial sanctions without consideration of his present or future ability to pay those sanctions.

{¶ 73} As discussed above, the trial court ordered appellant to pay court costs, which are mandatory under R.C. 2947.23. There is no requirement that the court must

28.

conduct a hearing to determine appellant's ability to pay the court costs. *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, ¶ 8, and *Rohda*, 6th Dist. Fulton No. F-06-007, 2006-Ohio-6291, at ¶ 13. Therefore, appellant's fourth assignment of error is not well-taken.

{¶ 74} In his fifth assignment of error, appellant argues the jury's verdict was contrary to the manifest weight of the evidence. Appellant's argument is premised upon an argument that the testimony of the other relatives that accused appellant of sexually abusing them as children was unfairly prejudicial.

{¶ 75} A challenge to the weight of the evidence questions whether the greater amount of credible evidence was admitted to support the conviction than not. *State v. Thompkins*, 78 Ohio St. 3d 380, 386-390, 678 N.E.2d 541 (1997). When weighing the evidence, the court of appeals must consider whether the evidence in a case is conflicting or where reasonable minds might differ as to the inferences to be drawn from it, consider the weight of the evidence, and consider the credibility of the witnesses to determine if "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 76} To establish the offense of rape, the state was required to prove that appellant engaged "in sexual conduct with another who is not the spouse of the offender * * *, when [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." R.C. 2907.02(A)(1). To establish the

29.

offense of gross sexual imposition, the state was required to prove that appellant had "sexual contact with another, not the spouse of the offender" who "is less than thirteen years of age, whether or not the offender knows the age of that person." R.C. 2907.05(A)(4).

{¶ 77} The prosecution presented evidence that the victim was not appellant's spouse, and she was under age 13 when appellant engaged in sexual conduct with her on numerous occasions. This case turns on the determination of the credibility of those who testified. We have already determined the testimonies of the other family members who believed appellant had sexually abused them as children were admissible in this case despite their prejudicial nature. Their testimonies did give support to the victim's credibility in light of appellant's testimony that his sister, the victim's grandmother, had a plan to punish appellant because of a fight over their mother's estate and that the victim was lying to help her grandmother. However, even without the additional testimony of the prior abuse victims, the victim's testimony alone was sufficient, if believed, to support appellant's conviction.

{¶ 78} Appellant presented his own testimonial evidence that he did not abuse the victim or any other relatives after he became an adult. While appellant testified in great detail regarding his whereabouts from November 2006, through August 2007, when he had a heart attack, he was unable to document any of his absences from home. Even if the jury believed that appellant worked out of town at times, he admitted he would return

30.

to his home between jobs. Also, even though appellant had a heart attack in 2007, he provided no documentary evidence that he was totally incapacitated during his recovery.

{¶ 79} While there was conflicting evidence presented in this case, when all of the evidence is considered as a whole, we find the jury did not lose its way in evaluating the evidence and drawing inferences from the direct evidence. While the appellate court considers the credibility of the witnesses when determining whether the trier of fact clearly lost its way in evaluating the evidence, we do not determine the credibility of the witnesses. *State v. Garrow*, 103 Ohio App.3d 368, 371, 659 N.E.2d 814 (4th Dist.1995). That matter remains a question for the trier of fact to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

{¶ 80} Therefore, we find appellant's conviction was not contrary to the manifest weight of the evidence. Appellant's fifth assignment of error is not well-taken.

{¶ 81} Having found that the trial court did not commit error prejudicial to appellant regarding his conviction, the judgment of conviction is affirmed. However, because the trial court did commit error prejudicial to appellant in the imposition of consecutive sentences, the sentence imposed by the Wood County Court of Common Pleas is vacated. This case is remanded to the trial court for resentencing consistent with this decision. Appellee is ordered to pay the court costs of this appeal pursuant to App.R. 24.

Judgment affirmed, in part,
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                             _____
                                                              JUDGE

Stephen A. Yarbrough, J.

                                             _____
James D. Jensen, P.J.                                         JUDGE
CONCUR.

                                             _____
                                                              JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.