[Cite as *State v. Duhart*, 2017-Ohio-7983.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                          Court of Appeals No. L-16-1283

    Appellee                                      Trial Court No. CR0201602207

v.

Jason Darnell Duhart                          **DECISION AND JUDGMENT**

    Appellant                                     Decided:  September 29, 2017

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Patricia S. Wardrop, Assistant Prosecuting Attorney, for appellee.

Patricia Horner, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Defendant-appellant, Jason Darnell Duhart, appeals the November 3, 2016

judgment of the Lucas County Court of Common Pleas, convicting him of one count of

vandalism, one count of grand theft of a motor vehicle, and three counts of breaking and

entering, and sentencing him to an aggregate prison term of 64 months. For the reasons that follow, we affirm the trial court judgment.

## I. Background

{¶ 2} On April 1, 2016, a number of storage units were broken into on Tractor Road in Toledo, Ohio. DNA found at the scene linked Jason Darnell Duhart to the crimes. On June 29, 2016, he was indicted on one count of vandalism, a violation of R.C. 2909.05(B)(1) and (E) (count one); two counts of grand theft of a motor vehicle, violations of R.C. 2913.02(A)(1) and (B)(5) (counts two and three); and 14 counts of breaking and entering, violations of R.C. 2911.13(A) (counts four through seventeen).

{¶ 3} On October 19, 2016, the state entered into an agreement with Duhart whereby he would enter a plea of guilty to counts one, two, seven, nine, and sixteen, in exchange for dismissal of the remaining counts. The trial court accepted Duhart's plea, made a finding of guilty, ordered a presentence investigation report ("PSI"), and continued the matter for sentencing on November 2, 2016. At that time, the court imposed a sentence of 17 months in prison on counts one and two, and ten months on counts seven, nine, and sixteen, all to be served consecutively for a total prison term of 64 months. The court also ordered restitution of $450.00 to one of the victims,[1] and imposed the costs of supervision, confinement, assigned counsel, and prosecution.

{¶ 4} Duhart appealed the judgment of the trial court, and he assigns the following errors for our review:

---

[1] Other victims made insurance claims for which restitution could not be ordered.

2.

I.  APPELLANT'S PLEA WAS NOT KNOWINGLY OR VOLUNTARILY MADE[.]

II.  THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO FIND THE MULTIPLE CONVICTIONS FOR BREAKING AND ENTERING WERE ALLIED OFFENSES OF SIMILAR IMPORT[.]

III.  THE TRIAL COURT ERRED IN ORDERING DEFENDANT TO PAY COSTS AND REIMBURSE THE STATE[.]

## II.  Law and Analysis

{¶ 5} Duhart raises challenges to the trial court's acceptance of his plea and to the sentence imposed by the court.   More specifically, he argues that Crim.R. 11 violations caused him to enter pleas that were not "knowing" and "voluntary."  He claims that three of his convictions should have merged for purposes of sentencing.  And he contends that the trial court improperly imposed costs.  We address each of these arguments in turn.

### A.  The Plea

{¶ 6} In his first assignment of error, Duhart contends that his guilty pleas were not entered knowingly and voluntarily as required by Crim.R. 11.  He claims that the trial court did not substantially comply with the mandates of Crim.R. 11 because it failed to recite the elements of each offense and to explain the facts supporting each offense.  The state counters that the trial court engaged in a full plea colloquy during which it questioned Duhart to ensure that he understood the charges against him.  The state also points out that Duhart signed a plea form confirming that he understood the charges, and the trial court questioned him about his execution of the form.

3.

{¶ 7} Crim.R. 11(C) provides, in pertinent part:

(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 8} The purpose of Crim.R. 11(C) is to ensure that the defendant has sufficient information to allow him or her to make a voluntary and intelligent decision regarding whether to plead guilty. *State v. Rinehart*, 6th Dist. Wood No. WD-11-030, 2013-Ohio-4.

3372, ¶ 17-18, citing *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981). With respect to constitutional rights, a trial court must strictly comply with Crim.R. 11(C) and must explain those rights in a manner reasonably intelligible to the defendant. *Id.,* citing *State v. Colbert*, 71 Ohio App.3d 734, 737, 595 N.E.2d 401 (11th Dist.1991). With respect to nonconstitutional rights, the trial court must substantially comply with Crim. R. 11(C). *Id.,* citing *State v. Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).

{¶ 9} A "plea of guilty is a complete admission of the defendant's guilt." Crim.R. 11(B)(1). The guilty plea itself provides the necessary proof of the elements of the crime, thus relieving the trial court of the obligation to determine whether a factual basis exists to support the plea. *State v. Fuller*, 12th Dist. Butler No. CA2008-09-240, 2009-Ohio-5068, ¶ 105-106. Additionally, the Supreme Court of Ohio has held that trial courts need not engage in a detailed recitation of the elements of a charge before accepting a plea. *State v. Deeb*, 6th Dist. Erie No. E-12-052, 2013-Ohio-5175, ¶ 17, citing *State v. Fitzpatrick*, 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, ¶ 57. *See also State v. Vialva*, 8th Dist. Cuyahoga No. 104199, 2017-Ohio-1279, ¶ 9 ("[C]ourts are not required to explain the elements of each offense * * *."); *State v. Giovanni*, 7th Dist. Mahoning No. 08 MA 150, 2009-Ohio-3333, ¶ 19 ("[T]he trial court has no obligation to explain the elements of the charge.").

5.

{¶ 10} Despite Duhart's contention to the contrary, the case law makes clear that the trial court was not obligated to recite the elements or explain the facts supporting each offense in order to render his plea "knowing" and "voluntary." Rather, in determining whether an accused's understanding of the nature of the offenses is sufficient to render his plea knowing and voluntary, we look to the totality of the circumstances. *Deeb* at ¶ 17.

{¶ 11} Here, the trial court addressed Duhart personally and confirmed that he speaks English, was not under the influence of medication, drugs, or alcohol at the time of entering his plea, did not suffer from mental illness, and was not threatened or promised anything to enter his plea. It inquired whether he had had sufficient time to talk to his lawyer, whether his lawyer went over evidence, discussed potential defenses, and answered his questions, and whether he was satisfied with the advice and representation of counsel. Duhart answered "yes" to all questions.

{¶ 12} The court explained to Duhart that it was not required to accept any sentencing recommendation. It identified each of the offenses by their revised code section numbers, specified the degree of the offenses, and made reference to the particular counts in the indictment to which Duhart was entering his pleas. The court specifically asked: "Do you understand the nature of those charges?" to which Duhart replied, "Yes, sir."

{¶ 13} The court went over the penalties of each charge. It explained that counts one and two carry a prison term of up to 18 months and a fine of up to $5,000, and counts seven, nine, and 16 carry a prison term of up to 12 months and a fine of up to $2,500.

6.

The court informed Duhart that it would be deciding whether to run his sentences concurrently or consecutively, and it advised that he could serve a maximum prison sentence of 72 months. The court also explained post-release control and the consequences of violating post-release control. Duhart responded "yes" when asked if he understood the possible sentences that could be imposed.

{¶ 14} The trial court went over the constitutional rights that Duhart was waiving by entering his plea, including the right to a trial by a jury of his peers who must render a unanimous verdict; the right to have the state prove his guilt beyond a reasonable doubt as to each element of each crime; the right to have the case tried to the bench instead of to a jury; the right to confront witnesses; and the right to compel attendance of witnesses at trial. The court also informed Duhart that if he exercised his right to a trial, he could not be forced to testify against himself and his silence could not be used against him, and it explained his limited appeal rights following the entry of a plea of guilty. Duhart answered "yes" when asked if he understood these rights.

{¶ 15} Finally, the trial court asked Duhart if he had questions for his lawyer or questions for the court. Duhart responded "no." The court confirmed with Duhart that his attorney had read him the charges to which he was entering his pleas, and that he understood the nature of the charges and the potential penalties involved. Duhart identified that he had signed the plea forms, that he had enough time to go over the forms with his attorney, and that he had no questions about the forms. The court asked if he was entering his plea voluntarily, and Duhart responded "yes, sir."

7.

**{¶ 16}** Considering the totality of the circumstances, we find that the trial court strictly complied with Crim.R. 11(C) by informing Duhart of the constitutional rights he was waiving by entering a plea, substantially complied with Crim.R. 11(C) by explaining his non-constitutional rights, and properly ensured that he was entering his pleas knowingly and voluntarily.

**{¶ 17}** We find Duhart's first assignment of error not well-taken.

### B. Allied Offenses

**{¶ 18}** In his second assignment of error, Duhart argues that the trial court committed error by failing to merge his three breaking and entering convictions. The state responds that each count to which Duhart entered a plea involved a separate victim, thus the offenses were of dissimilar import and not subject to merger.

**{¶ 19}** Both Duhart and the state observe that this issue was not raised in the trial court. The Ohio Supreme Court held in *State v. Rogers,* 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3, that "[a]n accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error." It recognized that "a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice." *Id.* It explained that to establish plain error in a trial court's failure to inquire whether convictions should merge for purposes of sentencing, "an accused has the burden to demonstrate a reasonable probability that the convictions are for allied offenses of similar import." *Id. See also State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658, 71 N.E.3d 234, ¶ 25.

8.

{¶ 20} Duhart argues that the trial court failed to elicit the facts forming the basis for his convictions, therefore, there is nothing in the record from which it can be ascertained whether the offenses here should have merged. He contends that while the state made reference at the sentencing hearing to "would-be victims," it failed to explain "what 'would-be' victims are, or how they make the offenses of breaking and entering separate and distinct, therefore not allied offenses of similar import."

{¶ 21} R.C. 2941.25 provides;

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 22} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 23, the Ohio Supreme Court specifically recognized that offenses are of *dissimilar* import "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable."

{¶ 23} We have reviewed the entire record here, and contrary to Duhart's assertion, it is clear that the offenses at issue were of dissimilar import because each

9.

offense represented harm to a separate victim. Duhart gained entry to a storage facility and broke into numerous units belonging to different individuals. The court specifically identified five of those individuals by name, and it sought clarification from the state that the counts to which Duhart entered pleas involved separate victims:

> [The state]: Your Honor, the State would just note that these charges do involve eleven separate and distinct would-be victims, though some suffered no loss other than broken locks.

> The Court: And these five felonies represent individuals, separate victims?

> [The state]: Each one represents an individual * * *.

{¶ 24} In addition to this, with respect to each of the five counts to which Duhart entered pleas, the PSI specifically identified the owner of the storage unit, the number assigned to the unit, and what was taken from the unit. The court made clear at sentencing that it had reviewed the PSI, and this was apparent from the statements it made at sentencing.

{¶ 25} Because the record is clear that Duhart was convicted of five separate offenses representing harm to five separate victims, Duhart is unable to demonstrate a reasonable probability that his convictions are for allied offenses of similar import. He has, therefore, failed to show any prejudicial effect on the outcome of the proceeding and cannot establish plain error.

{¶ 26} We find Duhart's second assignment of error not well-taken.

10.

## C.  Costs

{¶ 27} In his third assignment of error, Duhart argues that the trial court erred when it ordered him to pay the costs of prosecution, court costs, costs of supervision, and costs of confinement because the record lacks evidence that the trial court considered his present and future ability to pay.  He insists that there was no discussion of his employment history, his level of education, or "the type of employment, if any, the appellant had prior to the incident."

{¶ 28} The state counters that R.C. 2947.23(A)(1) obligates a sentencing court to impose the costs of prosecution against all convicted defendants.  It also maintains that the court is not required to hold a hearing to determine a defendant's ability to pay costs so long as there is some verification in the record that the trial court considered the defendant's present and future ability to pay.  Here, it claims, the sentencing transcript reveals that defense counsel advised the court that Duhart was working toward his GED and had worked a job making $500 per week.  It also points out that the trial court stated during sentencing that it had considered the record, oral statements, and the PSI, and given Duhart's employability, it found that Duhart reasonably may be expected to have the means to pay costs.

{¶ 29} Under R.C. 2947.23, the trial court is required to assess the costs of prosecution in all criminal cases against all convicted defendants regardless of their financial status, and no hearing is required before ordering the payment of court costs. The court, therefore, properly imposed these costs.

11.

**{¶ 30}** As for the costs of confinement, under R.C. 2929.18(A)(5)(a)(ii), the trial court may impose the costs of confinement in a state institution to the extent the offender is able to pay. *State v. Phillips*, 6th Dist. Wood Nos. WD-16-020, WD-16-028, WD-16-029, 2017-Ohio-7107, ¶ 37. This obviously requires a determination of whether the offender is or will in the future be able to pay. *Id.* While the court is not required to conduct a hearing to make this determination, the record must contain evidence that the court considered it. *Id.* at ¶ 38, citing *State v. Maloy*, 6th Dist. Lucas No. L-10-1350, 2011-Ohio-6919, ¶ 13.

**{¶ 31}** The court specifically found that "given his employability," Duhart has "or reasonably may be expected to have, the means to pay all or part of the applicable costs of supervision [and] confinement." We find that the record supports the court's finding.

**{¶ 32}** For one, defense counsel made the following statement to the court at sentencing:

> [Duhart's] girlfriend * * * has helped him with—towards working toward getting a GED. He does have employment lined up. I know that the court does hear that very often. However, I've had contact, information regarding his employment. For any individual to make $500 a week is a pretty good job.

**{¶ 33}** In addition to this, the trial court made repeated references to having reviewed the PSI. The PSI indicates that before his incarceration, Duhart was employed by the same company for three-and-a-half years earning $600 per week. It also indicates

12.

that he was 34 years old at the time of sentencing and his physical health is fair. While we understand that Duhart's convictions and incarceration may present challenges in finding employment after his release from prison, the record reflects that his age, health, education, and past employment experience render him employable and reasonably likely to be able to pay the costs imposed by the court.

**{¶ 34}** We will reverse a trial court's decision to impose costs and financial sanctions if it is contrary to law. R.C. 2953.08(A)(4) and (G)(2)(b). *State v. Farless*, 6th Dist. Lucas Nos. L-15-1060, L-15-1061, 2016-Ohio-1571, ¶ 4. We find that the imposition of costs here was not contrary to law.

**{¶ 35}** We, therefore, find Duhart's third assignment of error not well-taken.

### III. Conclusion

**{¶ 36}** We find that Duhart's entered his pleas of guilty knowingly and voluntarily. We find no error in the trial court's failure to merge Duhart's three breaking and entering convictions. And we find no error in the court's imposition of costs. We, therefore, find Duhart's three assignments of error not well-taken, and we affirm the November 3, 2016 judgment of the Lucas County Court of Common Pleas. The costs of this appeal are assessed to Duhart under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.

_____
JUDGE

James D. Jensen, P.J.

_____
JUDGE

Christine E. Mayle, J.
CONCUR.

_____
JUDGE