[Cite as *State v. Douglas*, 2018-Ohio-4455.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                    Court of Appeals No. WD-17-050

    Appellee                                    Trial Court No. 2017CR0133

v.

Shaquille Dejuan Douglas                   **DECISION AND JUDGMENT**

    Appellant                                   Decided: November 2, 2018

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**JENSEN, J.**

## I. Introduction

{¶ 1} Appellant, Shaquille Douglas, appeals the judgment of the Wood County

Court of Common Pleas, sentencing him to five years in prison after a jury found him

guilty of one count of felonious assault.

## A. Facts and Procedural Background

{¶ 2} On April 6, 2017, appellant was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(1) and (D)(1)(a), a felony of the second degree. The indictment stemmed from an assault that occurred on April 24, 2016, outside Doc Holiday's, a bar located in Bowling Green, Ohio.

{¶ 3} On April 18, 2017, appellant appeared before the trial court for arraignment. The trial court found appellant indigent, appointed counsel, and accepted appellant's plea of not guilty to the aforementioned charge. Thereafter, the matter proceeded through pretrial discovery.

{¶ 4} On July 14, 2017, appellant filed a notice of alibi with the trial court. In his notice, appellant stated that "on the night in question he was at his apartment that evening between the hours of 1:00 a.m. and 3:30 p.m. (the times that three alibi witnesses can account for Defendant's whereabouts) and did not leave that home during that time." Daryl Harris, Desmond Johnson, and Alante Long were named as alibi witnesses.

{¶ 5} Following pretrial discovery, the matter proceeded to a two-day jury trial on September 13 and 14, 2017. The following facts were established at trial.

{¶ 6} On the evening of April 24, 2016, officer Scott Frank of the Bowling Green Police Department was flagged down by a passerby as he was on bike patrol on Main Street in Bowling Green. Frank was directed to Doc Holiday's where he found an individual, Michael Schreiner, lying on the ground. According to Frank, Schreiner appeared to be unconscious, and he was bleeding from his face. Frank remained with

2.

Schreiner for five to ten minutes while waiting for an ambulance to arrive. During this time, Frank asked those around him if they saw what happened to Schreiner. According to Frank's testimony, an individual indicated that the assailant was "a white male in a white t-shirt who went east." Ultimately, Schreiner was transported to the Wood County Hospital. After hospital staff determined the extent of Schreiner's injuries, which included bleeding on the brain and several facial fractures, Schreiner was transported to St. Vincent's Mercy Hospital via life flight for treatment.

{¶ 7} During the trial, the state published video surveillance from outside of Doc Holiday's, which showed the incident as it unfolded. In the video, Schreiner is shown walking up to a group of individuals who are standing on the sidewalk outside of Doc Holiday's. Schreiner then began to argue with another individual, Ian Gulley, who testified that Schreiner "was making threats and saying he was going to F us up." Shortly after the argument ensued, another individual in a gray hooded sweatshirt punched Schreiner twice in the right side of the face, causing him to fall to the ground, where he lied unconscious until he was transported to the hospital. Notably, the assailant did not appear to be a white male, nor did he flee the scene heading east, as originally reported to officer Frank.

{¶ 8} The identity of the assailant is not immediately clear from the video, as the individual was wearing a hat as well as the hood from his sweatshirt. However, Gulley, appellant's lifelong friend, identified appellant as the individual wearing the gray hooded sweatshirt in the video. On cross-examination, Gulley stated that he was not absolutely

3.

sure that appellant was the one who assaulted Schreiner. Gulley explained that he saw many of his friends on the night of the assault, and could not be sure that appellant was the one depicted in the video, although he was sure that he saw appellant at some point in the night. As to the identity of the assailant, Schreiner testified that Gulley had contacted him via Facebook and informed him that appellant was the individual who assaulted him. Detective Andy Mullinex of the Bowling Green Police Department further stated that Gulley identified appellant as the assailant during the course of his investigation.

{¶ 9} Mullinex went on to testify concerning his process of identifying appellant as the one who committed the assault on Schreiner. While viewing various social media profiles, Mullinex discovered a picture of appellant's girlfriend, Sierra Graham, in which she is wearing a white Nike hat matching the hat worn by the assailant in the surveillance video. Upon further investigation, Mullinex found a picture of Graham, in which she was wearing the same hat that she wore on the night of the assault. Finally, Mullinex discovered pictures of appellant, in which he was wearing a silver necklace with an angel pendant. The assailant in the surveillance video was wearing a similar necklace. Notably, Mullinex testified that he observed appellant wearing this same necklace on the first day of trial.

{¶ 10} At the close of the state's case-in-chief, appellant moved the trial court for an acquittal pursuant to Crim.R. 29, arguing that the state failed to present evidence to establish that he was the individual who assailed Schreiner. Specifically, defense counsel asserted that "no one can identify on the video who the hooded person was who had done

4.

the punching. So with the lack of positive identification, I would move to acquit." Upon consideration of appellant's argument, the trial court determined that the state presented sufficient circumstantial evidence for the jury to find that identity had been established beyond a reasonable doubt. Thus, the trial court denied appellant's Crim.R. 29 motion.

{¶ 11} During his case-in-chief, appellant called one witness, Alante Long, who testified that he was with appellant on the night of the assault. According to Long, he and appellant, among others, were playing video games at Graham's apartment between the hours of 11:00 p.m. and 3:00 a.m.

{¶ 12} At the close of appellant's case-in-chief, defense counsel renewed the Crim.R. 29 motion, which was again rejected by the trial court. Following jury instructions and closing statements, the jury returned a guilty verdict on the charge contained in the indictment. The trial court proceeded immediately to sentencing, and ordered appellant to serve five years in prison.

{¶ 13} Appellant's timely appeal followed.

### B. Assignments of Error

{¶ 14} On appeal, appellant assigns the following errors for our review:

I. The trial court erred to the prejudice of Appellant in denying his Crim.R. 29 motion.

II. The court's verdict was against the manifest weight of the evidence presented at trial.

5.

III. Appellant received ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Constitution of the State of Ohio.

## II. Analysis

{¶ 15} In his first assignment of error, appellant argues that the trial court erred in denying his Crim.R. 29 motion. In his second assignment of error, appellant contends that the verdict was against the manifest weight of the evidence. Because these arguments are interrelated, we will address them together.

{¶ 16} A motion for acquittal under Crim.R. 29(A) is a challenge to the sufficiency of the evidence. *See State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 39. The denial of a motion for acquittal under Crim.R. 29(A) "is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 17} In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Were*, 118 Ohio St.3d 448,

6.

2008-Ohio-2762, 890 N.E.2d 263, ¶ 132.  Whether there is sufficient evidence to support a conviction is a question of law.  *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 18} In contrast, when reviewing a manifest weight of the evidence issue, we sit as a "thirteenth juror."  *Id.* at 387.  That is, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses.  *Id.*  Our role is to determine "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *Id.*  We reverse a conviction on manifest weight grounds for only the most "exceptional case in which the evidence weighs heavily against the conviction."  *Id.* at 387.

{¶ 19} Here, appellant was convicted of felonious assault in violation of R.C. 2903.11(A)(1), which provides that no person shall knowingly cause serious physical harm to another or to another's unborn.  That the state's evidence establishes that *someone* committed felonious assault in this case, as depicted in the surveillance video admitted into evidence, is certain.  However, appellant argues that the state failed to introduce sufficient evidence to establish that he was the individual shown assaulting Schreiner in the video.  We disagree.

{¶ 20} Contrary to appellant's assertion, the state presented identification evidence from Gulley, who testified that he was present at the scene of the crime, which is supported by the surveillance video.  Gulley identified appellant, his lifelong friend, as

7.

the assailant. Further, both Schreiner and Mullinex testified that Gulley informed them that appellant was the individual who committed the assault. Mullinex verified the identification of appellant by noting that appellant was wearing the same necklace in the video as the one he had on at trial. Further, the hat worn by the assailant in the video matched the hat that Graham, appellant's girlfriend, was wearing in one of her social media pictures. Finally, the hat that was worn by one of the female individuals standing alongside the assailant in the surveillance video matched the hat that Graham was wearing in another social media picture.

{¶ 21} Taken together, we find that this evidence sufficiently identifies appellant as the individual who assaulted Schreiner on the night in question. Although appellant presented an alibi witness, the evidence introduced by the state makes appellant's alibi defense implausible. Further, the alibi witness failed to recall any meaningful details from the night in question, other than the fact that he was playing video games at Graham's apartment during the time the assault was committed.

{¶ 22} In light of the foregoing, we find that the trial court properly denied appellant's Crim.R. 29 motion for acquittal. Moreover, we find that this is not the exceptional case in which the jury clearly lost its way. Accordingly, appellant's first and second assignments of error are not well-taken.

{¶ 23} In his third assignment of error, appellant contends that he received ineffective assistance of counsel.

8.

{¶ 24} The appropriate standard of review for a claim of ineffective assistance of counsel was outlined by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). There, the court stated:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable. *Id*. at 687.

{¶ 25} Here, appellant contends that his trial counsel was ineffective for failing to properly investigate his alibi. During the presentation of Long's testimony, the state objected to appellant's alibi defense because the notice provided to the state indicated that appellant was at his apartment on the evening of the assault. Appellant's apartment was located in Lima, Ohio. However, Long testified that he and appellant were playing

9.

video games at Graham's apartment in Bowling Green when the assault occurred. During a sidebar conference following the state's objection, the court asked defense counsel, "Are you continuing along this line of the alibi?" Defense counsel responded, "Your Honor, I would have no further questions. That's pretty much all I was going to ask this witness." Appellant argues that he was prejudiced by counsel's deficient notice of alibi insofar as counsel was unable to continue to question Long after the sidebar conference. Appellant asserts that his counsel should have further investigated the alibi defense to determine that appellant was in Bowling Green on the night of the incident, not at his apartment in Lima, and to reflect that fact in the notice counsel provided to the state.

{¶ 26} Given defense counsel's acknowledgement that he had already asked the questions he was hoping to ask of Long, we find that appellant cannot establish that the outcome of the proceedings would have been different had counsel further investigated appellant's alibi.

{¶ 27} Next, appellant argues that trial counsel was ineffective for failing to call the other two alibi witnesses, Daryl Harris and Desmond Johnson. Generally, counsel's decision whether to call a particular witness falls within the purview of trial strategy, and a reviewing court will not second guess that decision. *State v. Davis*, 10th Dist. No. 09AP-869, 2010-Ohio-4734, ¶ 18. Additionally, "a defendant is not deprived of effective assistance of counsel when counsel chooses, for strategical reasons, not to pursue every possible trial tactic." *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988).

10.

**{¶ 28}** In this case, the record contains no evidence from which we can glean what Harris's or Johnson's testimony would have been had they been called by defense counsel. Presumably, these witnesses would have testified in a manner similar to Long, who stated that appellant was playing video games at Graham's apartment. Given the state's compelling evidence on the issue of identity, which contradicts appellant's proposed alibi, we find that trial counsel's strategic decision not to call Harris or Johnson did not prejudice appellant, and therefore does not rise to the level of ineffective assistance.

**{¶ 29}** Finally, appellant asserts that his trial counsel was ineffective for failing to impeach Gulley on cross-examination by questioning him as to a falling out between he and appellant that occurred prior to Gulley's identification of appellant to Schreiner and Mullinex. Notably, we have previously stated that decisions regarding the manner in which a witness is cross-examined are tactical in nature. *State v. Phillips*, 6th Dist. Wood Nos. WD-16-020, WD-16-028, WD-16-029, 2017-Ohio-7107, ¶ 47, citing *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980). Moreover, appellant's trial counsel cross-examined Gulley on the issue of identification, which resulted in Gulley walking back his identification of appellant as the assailant and acknowledging that he was not 100 percent sure that it was appellant who assaulted Schreiner. Therefore, we cannot say that appellant was prejudiced by counsel's failure to impeach Gulley by eliciting testimony regarding a dispute that arose between appellant and Gulley after the assault occurred.

11.

**{¶ 30}** Having concluded that appellant's ineffective assistance arguments are without merit, we find appellant's third assignment of error not well-taken.

### III. Conclusion

**{¶ 31}** For the foregoing reasons, the judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.       _____
                                                 JUDGE
James D. Jensen, J.      

                                      _____
Christine E. Mayle, P.J.                               JUDGE
CONCUR.

                                      _____
                                                 JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.